

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*
**JTM** 05.06.21

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

May 7, 2021

Christian Lassiter, Esq.
Office of the Federal Public Defender
100 South Charles Street
Tower II, Suite 1100
Baltimore, Maryland 21201

Re:     *United States v Eric Donovan Ashe,*
        Criminal #: ELH-19-0536

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Friday, May 14, 2021, at 5:00 p.m., it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offense of Conviction

1.      The Defendant agrees to plead guilty to Count One of the Indictment now pending against him, charging him with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offenses

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

      a.      That on September 5, 2019, the Defendant knowingly distributed a visual depiction;

      b.      That said visual depiction was shipped or transported in and affecting interstate or foreign commerce by any means, including computer;

c.   That the production of said visual depiction involved the use of a minor engaging in sexually explicit conduct;

d.   That the defendant knew that at least one of the individuals in such visual depiction was a minor and knew that the visual depiction was of such minor engaged in sexually explicit conduct.

## Penalties

3.   The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Imprisonment | Maximum Imprisonment | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------------|----------------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 2252(a)(2) | 5 years | 20 years | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

a.   Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.   Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment up to the entire original term of supervised release if permitted by statute, followed by an additional term of supervised release.

c.   Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664, and 2259.

d.   Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.   Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.   Collection of *Debts*: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

g.      Additional Special Assessment: The Defendant must also pay an additional special assessment of $5,000, unless the defendant is indigent, pursuant to 18 U.S.C. § 3014.

### Sex Offender Registration

4.      The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5.      The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Defendant's Consent to Proceed via Video-Teleconference

6.  This Office and the Defendant agree, pursuant to the Coronavirus Aid, Relief, and Economic Recovery Act, H.R. 748 (the CARES Act), enacted on March 27, 2020, that certain federal court proceedings are permitted to proceed telephonically, or via video-teleconference. The parties further agree that Section 15002(b) of the CARES Act permits the District Court to conduct certain hearings in felony matters remotely. Further, pursuant the District of Maryland's Standing Order 2020-06, dated March 29, 2020, District Court Judges are permitted to conduct Rule 11 plea hearings and sentencing hearings in felony cases remotely.

7.  The Defendant consents, after fully consulting with undersigned defense counsel, to proceed with the Rule 11 plea hearing and the sentencing hearing telephonically, or via video-teleconference, in this matter. Because an in-person / in-court proceeding in this matter cannot occur without seriously jeopardy to public health and safety, and because delay in this case will

Rev. August 2018

result in serious harm to the interests of justice, the Defendant specifically requests to proceed remotely. The Defendant agrees to proceed remotely, and knowingly and expressly waives any and all rights to a personal appearance in court in this matter.

<u>Advisory Sentencing Guidelines Apply</u>

8.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

9.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

a.      The base offense level is twenty-two (22) pursuant to U.S.S.G. § 2G2.2(a)(2).

b.      Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the depictions involved prepubescent minors or minors under the age of twelve (12). (Subtotal: 24).

c.      Pursuant to U.S.S.G. §2G2.2(b)(3)(F), there is a two (2) level increase because the offense involved distribution. (Subtotal: 26).

d.      Pursuant to U.S.S.G. §2G2.2(b)(6), there is a two (2) level increase because the offense involved the use of a computer. (Subtotal: 28).

e.      Pursuant to U.S.S.G. §2G2.2(b)(7)(D), there is a five (5) level increase because the offense involved more than 600 images. (Subtotal: 33).

f.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of

Rev. August 2018

sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. (Subtotal: 30).

10.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Rule 11 (c)(1)(C) Plea

12.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that the following sentence is the appropriate disposition of this case taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a):  a sentence of no more than ten (10) years imprisonment, and the following conditions of supervised release:

a.     You must not have direct contact with any child you know or reasonably should know to be under the age of 18 without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours.  Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

b.     You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

c.     To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

Rev. August 2018

13.     This Agreement does not affect the Court's discretion to impose a lawful term of supervised release, to set any additional lawful conditions of probation or supervised release, or to impose a fine.

14.     In the event that the Court rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(d)(2)(A). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

15.     This parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

## Waiver of Appeal

16.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent such challenges legally can be waived.

b.      The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever lawful sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release):

c.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

Rev. August 2018

17.   a.   The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense(s), substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b.   Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities including:

i.   The following items originally seized by law enforcement authorities from the Defendant's residence on September 11, 2019:

1. Samsung Galaxy Note 8 cell phone, Model: SM-N950U1, Serial #: R28J82328VT, IMEI: 3585 1008 0132 493, made in China;

2. Kingston 8GB DataTraveler G4 Thumb drive, # 7445566, made in Taiwan;

3. Samsung S6 Edge cell phone, Model: SMG928VZKE, IMEI: 990005880585133, made in Korea; and

4. Samsung Galaxy S4 cell phone, Model Number: SCH-I545, IMEI: 990004373898547, made in China.

c.   The Defendant agrees to consent to the entry of orders of forfeiture for the property described in the two above subparagraphs and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d.   The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

e.   The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

8

## Restitution

18.     The Defendant agrees to the entry of a restitution order for the full amount of the victims' losses.  The defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.  The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation.  Defendant will make a good faith effort to pay any restitution.  Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time.  The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation.  The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution.  If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Defendant's Conduct Prior to Sentencing and Breach

19.     a.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

        b.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea.  The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement.  In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

Rev. August 2018

20.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

21.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

By: _____

Paul E. Budlow
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6/11/2021
Date

_____
Eric Donovan Ashe

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

Rev. August 2018

6/11/21
Date

Christian Lassiter, Esq.

Rev. August 2018

**Attachment A**

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Eric Donovan Ashe ("Ashe"), age 24, is a resident of Baltimore City, Maryland. As detailed below, starting no later than least 2017 through September 2019, Ashe, portrayed himself on-line as a minor females, 13 to 15 years old, and sold purported self-made pornography to various men in exchange for over $24,000 in Amazon gift cards. Additionally, Ashe searched child pornography for at least 5 years, and also distributed and received known child pornography

In 2016, the defendant pretending to be a minor female, communicated with Jane Doe 1, who was born in 2003 and was 13 years old. The defendant used those communications to communicate with Jane Doe 1 as himself, and engaged in sexually explicit conversations with Jane Doe 1. In January 2017, when Jane Doe 1 was still 13, the defendant opened and controlled an Instagram social media account under a fictitious username, and portrayed himself as a 13-year-old female, using Jane Doe 1's likeness. The defendant uploaded numerous images and videos of Jane Doe 1 that he obtained from her social media accounts. Jane Doe 1 did not give permission for Ashe to use her likeness.

The defendant used the account to communicate with dozens men through Instagram direct messaging. During these conversations, the defendant arranged to produce and sell sexually explicitly pictures and videos of Jane Doe (who he claimed to be) to the men. The defendant offered various poses and sex acts in exchange for Amazon gift cards in various amounts. Once the defendant completed the negotiations on Instagram, he instructed the men to send the Amazon gift cards to him, and then directed the buyers to communicate with him on Kik, a different social media application. Once on Kik, after the defendant received payment, he used Kik to send the sexually explicit images and videos to the men.

Below are example of the conversations the defendant had while pretending to be Jane Doe 1:

Conversation with User 1:

Below is a portion of an example of a conversation involving the defendant, portraying himself as Jane Doe 1, and another Instagram user, "User 1." This conversation occurred on July 1, 2017. Below is a portion of their chat:

| | |
|---|---|
| User 1: | You are a virgin right ? |

1

| | |
|---|---|
| Defendant (as Jane Doe 1): | Um.ya |
| User 1: | Have you touched another girls pussy ? |
| Defendant (as Jane Doe 1): | Ya |
| User 1: | [sent a photograph of three young minor females standing in front of a bathroom mirror, the middle female is a white, blonde, female in a bra and underwear] |
| User 1: | Who is the girl in the middle ? |
| Defendant (as Jane Doe 1): | Me |
| User 1: | Really!?!?!? |
| User 1: | Fuck you so sexy ! |

***

| | |
|---|---|
| Defendant (as Jane Doe 1): | Like this? |
| Defendant (as Jane Doe 1): | [sent a photograph of a female from the waist down, seated on the ground with her legs spread apart, and her vagina exposed to the camera. The age of this female is unable to be determined.] |
| User 1: | Yes I love that !! |

***

| | |
|---|---|
| User 1: | You like watching older guys fuck young girls ? |
| Defendant (as Jane Doe 1): | I never seen that be4 |
| User 1: | Maybe I can show you some time if you wana see |
| Defendant (as Jane Doe 1): | Sure. Why not |
| User 1: | How often do you masturbate ? |
| Defendant (as Jane Doe 1): | Hmmmm. Every night almost |
| User 1: | Have you ever been caught masturbating ? |
| Defendant (as Jane Doe 1): | Yes |
| User 1: | I would love to be the only guy you do naughty stuff for. What's it take to make that happen ? |
| Defendant (as Jane Doe 1): | Lol. I dont |
| User 1: | I wana make you my naughty lil girl sooooo bad |

| | |
|---|---|
| User 1: | [sent an image of a prepubescent female sitting on the lap of an individual and appears to be engaged in vaginal intercourse with that individual. The prepubescent female is also performing oral sex on another male at the same time.] |
| Defendant (as Jane Doe 1): | Daaang. Hoe old is she |
| Defendant (as Jane Doe 1): | How* |
| User 1: | Maybe your age |
| User 1: | I will show you more if you do special things for me |
| User 1: | That picture is of her dad and brother and her. She is riding her brother while she sucks her dads cock |

Conversation with User 2:

Below is a portion of another conversation, with my comments in brackets, involving the defendant and another Instagram user, "User 2." This conversation occurred between July 1, 2017 and September 15, 2018:

| | |
|---|---|
| User 2: | You changed your Instagram |
| Defendant (as Jane Doe 1): | No. I got a new one |
| User 2: | Oh what happened to your last one |
| Defendant (as Jane Doe 1): | What do ya think lol |
| User 2: | Did it get deleted |
| Defendant (as Jane Doe 1): | Ya |
| User 2: | Lol how come |
| Defendant (as Jane Doe 1): | Underage |

***

| | |
|---|---|
| Defendant (as Jane Doe 1): | [sent a picture of a white female bent over, spreading apart her vagina and anus with one of her hands. The age of this female is unable to be determined.] |

| | |
|---|---|
| User 2: | Haha well thank you and wow you look so tight |

***

| | |
|---|---|
| Defendant (as Jane Doe 1): | Ima try to make a video for u |

3

| | |
|---|---|
| User 2: | Really oh man I'm gonna end up butting quick |
| Defendant (as Jane Doe 1): | [Sent a 60 second video of a female masturbating. In the beginning of the video the face of a young blonde female with shoulder length hair is briefly seen. The video then zooms in and focuses on the female's vagina. After approximately 30 seconds, the female stands up and leaves the screen. She then returns on screen and continues to masturbate for approximately 15 more seconds. The female in this video has a very similar appearance to the female being portrayed in the defendant's Instagram account.] |

***

| | |
|---|---|
| User 2: | Wooooow omg so yummy |
| Defendant (as Jane Doe 1): | Lol |
| User 2: | I nutted twice to that video today I wish it was longer |

***

| | |
|---|---|
| User 2: | What you doing |
| Defendant (as Jane Doe 1): | Drinking water |
| Defendant (as Jane Doe 1): | Hoping nobody blocks my page again. |
| User 2: | I told ya you should've changed your age |
| Defendant (as Jane Doe 1): | I did. |
| Defendant (as Jane Doe 1): | I changed it to 13 |

Conversation with User 3:

The defendant also sent a "menu" to dozens of Instagram users to show the price of each type of picture/video he was selling. As an example, below is a portion of a conversation between the defendant and another Instagram user, "User 3", on September 27, 2017:

| | |
|---|---|
| User 3: | Okay, so I hear you might be legit…tell me what you're willing to do and for how much $ |
| Defendant (as Jane Doe 1): | $3 for Tummy pics $5 bucks for regular pics $6 for regular videos (belly dancing) $10 for censored nudes $15-$20 for sexy or suggestive pics $30 to 40- for nudes pics 50 for masturbation videos $100-$200 for strip videos |

| Defendant (as Jane Doe 1): | $30-$40 for nude pics 30- 4 35- 6 40- 8  $50 u get two masturbation vids or (1 masturbation vid and a full body nude pic) |
|---|---|
| Defendant (as Jane Doe 1): | 100 would get u 2 sexy 2 nude 2 masturbation video And a full body nude |
| Defendant (as Jane Doe 1): | Buy a 40 dollar pic bundle get a premium twerk video in a thong free |
| User 3: | What if I want custom stuff you do what I say |
| Defendant (as Jane Doe 1): | That's not how it works |

Conversation with User 4:

On July 7, 2017, the defendant engaged in a conversation with Instagram user "User 4". The defendant explained to User 4 where to send an Amazon gift card for the pictures/videos. A portion of their conversation is shown below:

| User 4: | How do I send you a donation for some pictures? |
|---|---|
| Defendant (as Jane Doe 1): | You send it via Amazon online gift card |
| Defendant (as Jane Doe 1): | [sent a screen shot of an Amazon online gift card, followed by another screen shot of the order page of an online Amazon gift card with the word "Princess" hand written over the "To:" section of the order page] |
| Defendant (as Jane Doe 1): | Where it says princess u put my email |
| User 4: | Got it. What's your email please? |
| Defendant (as Jane Doe 1): | Chelswithbells |
| User 4: | @gmail.com? |
| Defendant (as Jane Doe 1): | Oops |
| Defendant (as Jane Doe 1): | Sorry |
| Defendant (as Jane Doe 1): | My email is Chelsea.marte@gmx.com |
| User 4: | Cool. I'll send you a card shortly. Thank you |

5

Conversation with User 5:

On September 18-19, 2018, the defendant engaged in a conversation with User 5. A portion of their conversation is below:

| | |
|---|---|
| User 5: | When is it a good time to spoil you? I have another Amazon gift card for you |
| Defendant (as Jane Doe 1): | Now if u want or tonight |
| User 5: | I would do like it now. The code is AQGE-FCM6EM-F6JL9 |
| User 5: | It's $40 |
| Defendant (as Jane Doe 1): | Why now lmao. Horny? |
| User 5: | Yes I'm horny |
| User 5: | I'm a terrible atheist |
| User 5: | Hello? Is tonight a better option for you then? |
| Defendant (as Jane Doe 1): | Yah I'm doin hw |
| User 5: | Ok. When should I text you on kik tonight? |
| Defendant (as Jane Doe 1): | Ummm 11 or 12 maybe |
| User 5: | So at 9pm PST then? |
| Defendant (as Jane Doe 1): | 2 or 3 hours |
| User 5: | Alright I'll text you then |

Later in the conversation, the defendant (as Jane Doe 1) sent User 5 eight photographs of a naked female in varying positions and angles. Two of these pictures are close ups of a vagina being spread apart, and one is of a female bent over spreading apart her anus. It is unclear if the pictures are of the same female and the age of the individuals in the photos is unable to be determined. None of the photographs include the face of the female.

***

The defendant also used two other fictious accounts where he purported to be minor females. The accounts were Jane Doe 2 and Jane Doe 3. Jane Doe 2's Instagram account showed a minor female with dark hair wearing a bikini, that indicated that she was "14 years youthful". Jane Doe 3's Instagram account showed a profile picture of two minor females, both with dark hair.

Conversation with User 6:

On October 16, 2018, the defendant was engaged in a conversation with an Instagram user, "User 6". User 6 had sent the defendant two Amazon gift cards prior to this point in the conversation. A portion of their conversation is shown below:

| | |
|---|---|
| Defendant (as Jane Doe 1): | It was 25 on each card right? |
| User 6: | Yes |
| Defendant (as Jane Doe 1): | U know u can get two masturbation videos instead right |
| User 6: | Are they new I have 2 from u already |
| Defendant (as Jane Doe 1): | U do? Which are they? |
| User 6: | Bathroom and then w a brush I think |

[Later in this same conversation on October 16, 2018]

| | |
|---|---|
| User 6: | Do u know [Jane Doe 2] |
| Defendant (as Jane Doe 1): | Shes my sister |
| User 6: | Wow |
| Defendant (as Jane Doe 1): | ? |
| User 6: | She's fine as u |

On November 16, 2018, the defendant and an Instagram user, User 7, were engaged in a conversation. Below is a portion of their conversation:

| | |
|---|---|
| User 7: | I hear you. I'll pick up a gift card next week and DM you. Do Alice & Luna still have premiums1? |
| Defendant (as Jane Doe 1): | idk ask em |
| User 7: | Luna said to ask you. No biggie. |

The conversations above are provided as examples, and the defendant stipulates and agrees that he engaged in similar conversations with dozens of other Instagram users. Throughout the conversations, the defendant portrayed himself as Jane Doe 1, who was portrayed in the Instagram page.

---

[1] Premiums is a slang term generally used to describe sexually explicit images or videos that are sent to someone in exchange for money.

Amazon Payments, 2017-2018:

From July 7, 2017 through December 17, 2018, Ashe loaded over $24,000.00 in Amazon Gift cards onto his Amazon account. Of that amount, the account had a "Total Charged to Customer" of over $17,000.00, which was paid for using the account's gift card balance. The purchases included electronics, restaurant gift cards, food, and clothing, and all of the orders were shipped to the defendant at his home address, 1524 Lakeside Avenue, Baltimore, Maryland.

September 11, 2019 Execution of Search Warrant:

On September 11, 2019, a search warrant was executed at Ashe's residence at 1524 Lakeside Avenue, Baltimore, Maryland. During the search, investigator's seized Ashe's mobile phone and other digital device, including:

1. Samsung Galaxy Note 8 cell phone, Model: SM-N950U1, Serial #:R28J82328VT, IMEI: 3585 1008 0132 493, made in China;

2. Kingston 8GB DataTraveler G4 Thumb drive, # 7445566, made in Taiwan;

3. Samsung S6 Edge cell phone, Model: SMG928VZKE, IMEI: 990005880585133, made in Korea; and

4. Samsung Galaxy S4 cell phone, Model Number: SCH-I545, IMEI: 990004373898547, made in China.

Ashe voluntarily spoke to investigators, and initially denied opening or controlling any of the Instagram accounts, and denied selling pornography. Ashe eventually stated that he sold pornography of adults that he obtained from the website Pornhub. The defendant also admitted to operating multiple social media accounts that portrayed other individuals, including what appeared to be minor females.

The defendant's digital devices were examined and each of the devices above contained files of child pornography. Over five hundred videos and 250 images of child pornography were found on the devices. The files included images of prepubescent minors engaging in sex acts with others. Numerous files of child pornography on the defendant's phone were named based on the age of the victim, and many were in single digits, such as "7 yo …", etc.

The forensic examination of his devices also revealed that Ashe had been searching for and child pornography since 2014 and as recently as 2019. As an example, the following searches were found on the Samsung Galaxy S6 Edge that was found in Ashe's bedroom:

- 12/10/15:    "movies about pedopiles"

8

- 8/31/2015:  "What is distribution of child porn"
- 8/11/2015:  "What is child porn"
- 8/18/2015:  "father and friends molest daughter"
- 8/11/2015:  "child porn" and "what is child porn"
- 7/1/2015:   "statistics most white men are pedophiles"
- 6/4/2015:   "good pedophile movies"
- 3/10/2015:  "I'm an adult. I accidently saw child porn?"
- 2/13/2015:  "10 year old girl", "12 year old girl", "11 year old girl"
- 1/27/2015:  "pedophile movies", "little children full movie", "real brother and sister porn"

- 9/24/2014:  "man send child porn on twitter"
- 9/15/2014:  "rape of a minir" and "child grooming"
- 9/4/2014:   "pedobear"
- 8/17/2014:  "are all men pedophile" and "necrophilia"
- 5/5/2014:   "movies about kids getting raped"
- 2/25/2014:  "effects on getting child molested", "movies about rape", "movies about pedopiles"

- 2/17/2014:  "child molestation", "child falsely accused of molestation", "molestation stories", "child abuse stories", "child pornography", "child abuse images", "rape of a child", multiple searches for age of consent, "is it ok for 17 year old to date 14 year old" etc.

- 2/17/2014:  "Child pornography laws in the United States"
- 2/10/2014:  "10 year olds girls in underwear"

There were also multiple searches for terms such as "teen porn", "self filmed teen masturbation", "bald pussy", "spread vagina lips", "training bra", and "flat chested girls".

Distribution of Child Pornography:

The forensic examination also revealed that Ashe had distributed child pornography to others, including images depicting prepubescent minor engaging in sex acts with others.

September 5, 2019, the Ashe used the Kik application to send a video to another user. The video is 1 minute and 41 seconds and depicts a prepubescent minor female touching her exposed vagina with a curling iron a pubescent minor female masturbating with what appears to be a curling

iron. The video was also found on the defendant Samsung Galaxy Note 8, listed above, which was found on his person during the search warrant.

Ashe's mobile phone and other devices, used to possess, receive and distribute child pornography, were manufactured out of the state of Maryland. The visual child pornography possessed, received, and distributed and received by the defendant using a mobile phone and the internet, and was therefore in or affecting interstate or foreign commerce, and the child pornography was also produced using materials that had been transported in or affecting interstate or foreign commerce.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case

_____
Eric Donavan Ashe

I am Mr. Ashe's attorney. I have carefully reviewed the statement of facts with him.

_____
Christian Lassiter, Esquire
Counsel for Eric Donovan Ashe