**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> v. <br><br> **ERIC DONOVAN ASHE** | **CASE NO: ELH-19-0536** |

**GOVERNMENT'S SENTENCING MEMORANDUM IN SUPPORT OF A SENTENCE OF 10 YEARS FOR ERIC DONAVAN ASHE**

Eric Donavan Ashe, pretending to be a minor female as young as 13, sold sexually explicit images and videos to dozens of men. Ashe and his customers derived sexual gratification from the sexual abuse and degradation of minor females, including prepubescent children. Ashe's nearly two years of selling purported self-produced child pornography, distributing child pornography of prepubescent minors engaged in sex acts to his customers, and years of trafficking in child pornography shows that he presents a significant risk to the public. For the reasons set forth below, the Court should impose a sentence of 10 years' imprisonment followed by a lifetime of supervised release.

I. **INTRODUCTION**

On June 14, 2021, the defendant pled guilty to Count One of the Indictment, which charges him with Distribution of Child Pornography. The sentencing hearing on this matter is scheduled for November 8, 2021. The defendant's guilty plea was pursuant to Rule 11(c)(1)(C), and the parties agree that as sentence of no more than 10 years imprisonment is the appropriate sentence. United States Probation Officer Paige Cameron prepared the Presentence Report, which provides for a final offense level of 30, a criminal history category I, and an advisory guidelines range of 97 to 121 months of incarceration. The government agrees with the guideline calculation in the Pre-Sentence Report (PSR).

1

A. **Facts of the Offense**

The facts in this case are truly disturbing and reflect the danger that the defendant poses to the public, and to children in particular.[1]

Despite his initial denials, in addition to distributing child pornography, the defendant searched for and viewed child pornography for at least 5 years, from 2014 when he was 19, through 2019 when he was 24. The defendant's searches are included in the stipulated facts, and include terms clearly demonstrating that the defendant was seeking images of prepubescent females ("10 year old girl"), incest ("father and friends molest daughter") and graphic sexual abuse ("rape of a child", "child abuse images"). This activity occurred over many years, and included the years prior to the defendant's scheme to sell child pornography, demonstrating his own sexual attraction to images of child rape. The defendant's digital devices contained over five hundred videos and 250 images of child pornography, including images of prepubescent minors engaging in sex acts with others. Numerous files of child pornography on the defendant's phone had names based on the age of the victim, including many in single digits, such as "7 yo …".

On September 5, 2019, the defendant sent the following 1 minute and 41 seconds video depicting the following conduct to another user: A prepubescent minor female masturbating her exposed vagina with what appears to be a curling iron.

The most troubling conduct in this case, and what brought the defendant to the attention of law enforcement, however, was his sale of purported self-produced child pornography[2] to dozens of adult males. As part of his scheme, the defendant stole the likeness of Jane Doe 1, and

---

[1] The complete stipulation of facts is included in the plea agreement and the Pre-Sentence Report.

[2] Investigators believe that the majority of the images sold as child pornography by Ashe to the dozens of men are child pornography, but to date, have been unable to conclusively determine that the images were of a minor, either Jane Doe 1, or someone else.

pretending to be her, communicated with dozens of adult men about sexual activity. The defendant offered a menu of images and videos of sex acts and prices, and sold sexually explicit images to the dozens of men in exchange for Amazon gift cards. During his interaction with these men, the defendant repeatedly normalized the sexual abuse of young girls by adult men. He also normalized the sexual abuse of prepubescent minors by receiving images of prepubescent minors engaged in sex acts with adult men from his customers.

In just 17 months – not the entirety of the scheme – the defendant received over $24,000.00 in Amazon gift cards by selling purported self-produced child pornography.

When the defendant's residence was searched and he was interviewed, the defendant denied opening or controlling any of the relevant accounts, and denied selling pornography. Only later did he eventually admit that he sold pornography, and claimed that it was of adults that he obtained from an adult pornography website. He also admitted to operating multiple social media accounts that portrayed other individuals, including what appeared to be minor females.

<u>Review of Videos and images</u>

By agreement of the parties, and if it is agreeable to the Court, a Special Agent of the FBI will display various digital files to the Court in chambers prior to the sentencing, at a mutually agreeable time.

### B. **Applicable Sentencing Guidelines Factors**

The advisory sentencing guidelines in this case have been agreed to by the parties, and adopted in the PSR. The base offense level for distribution of child pornography is twenty-two pursuant to U.S.S.G. §2G2.2(a)(2). There is a two level increase because the depictions involved prepubescent children under the age of twelve, and another two level increase because the offense involved distribution. There is a two level increase because the distribution involved the use of a

computer, and a five level increase because the number of images involved in the offense and its relevant conduct is more than 600. Thus, the offense level applicable to the defendant's conduct is thirty-three.

The defendant does not receive any criminal history points because he has no prior convictions. Thus, based on the agreed advisory guidelines, the defendant's criminal history category is I, and his advisory sentencing guidelines range is 97-121 months' imprisonment after 3 levels are deducted for acceptance of responsibility.

## II. ARGUMENT

### A. The Defendant's Active Sale of Purported Child Pornography and Participation in an Online Community of Pedophiles Demonstrates the Increased Danger he Poses to Society

The defendant did not simply collect and share child pornography anonymously on the internet, although he did that too. For well over a year, the defendant was communicating with others in an online community of people with an interest in the sexual exploitation of minors – including advertising and distributing videos and images of the sexual abuse of children. The defendant himself sold degrading images and videos of the sexual abuse of who he represented to be young children, for his financial benefit, as well as his own pleasure, and also to seek the approval and gratification of other pedophiles. The $24,000 of Amazon gift cards is a direct representation of the degree to which he validated and normalized his own sexual interest in children, and the pedophilia of the other members of this online child pornography community.

In December 2012, the United States Sentencing Commission published a comprehensive report examining federal sentencing policy in child pornography cases. FEDERAL CHILD PORNOGRAPHY OFFENSES, REPORT TO CONGRESS. UNITED STATES SENTENCING

COMMISSION (2012).[3]  In its report, the Sentencing Commission details the significant risk offenders involved in on-line communities, such as the applications the defendant used, pose to the community, finding, "offenders' participation in Internet 'communities' in which members promote and share child pornography validates the sexual exploitation of children and may lead to the production of new child pornography images (and the consequent sexual abuse of children) by other community members." *Id.* at 312-313.  In this case, the defendant pretended to be a 13-year old female and actively promoted and advertised the production of sexually explicit conduct, while also graphically discussing sexual activity by the supposed minor.  These conversations were with adult males who openly discussed and shared images of prepubescent minors being molested by adult males.  The defendant's conduct undoubtedly normalized and encouraged the sexual abuse of minors to men who are sexually attracted to children.  His conduct has directly caused an increased risk of sexual abuse of children.

The commission's recommendations regarding amendments to 2G2.2 reflected the fact the guidelines fail to account for participation in such communities, referenced the fact that the use-of-computer enhancement fails to distinguish these sorts of more dangerous users from others, and proposed that 2G2.2 be amended to include as a factor to be considered in imposing sentences: "the degree of an offender's engagement with other offenders — in particular, in an Internet 'community' devoted to child pornography and child sexual exploitation." *Id.* at 320-24.  Such an enhancement would certainly be applied to the defendant, who advertised and sold purported self-produced child pornography to dozens of men, while explicitly discussing the sexual exploitation of minors with these men, while pretending to be a minor.  Although to date the guidelines have

---

[3] Available online at http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (accessed October 8, 2021)

not been amended to reflect the Commission's recommendation that the guidelines contain an enhancement, sentencing courts have nonetheless recognized this a factor calling for a higher sentence: "Consistent with the Commission's recommendations, offenders who participated in an online child pornography community or engaged in aggravating conduct received longer sentences than offenders who did not engage in such conduct."[4]   Under 18 U.S.C. § 3553(a), this Court should similarly take the defendant's participation and role in this community into account as evidence of the significant risk he poses to the community.

### B. The Defendant's Distribution of Child Pornography Further Harmed the Victims Depicted in the Images and Videos

"As a general matter, the prohibition of child pornography derives from a legislative judgment that such materials are harmful to the physiological, emotional, and mental health of children, and that preventing the sexual exploitation of this uniquely vulnerable group 'constitutes a government objective of surpassing importance.'" *United States v. Cobler*, 748 F.3d 570, 580 (4th Cir. 2014) cert. denied, 135 S. Ct. 229 (2014) (quoting *New York v. Ferber*, 458 U.S. 747, 757–58 (1982)).

"It is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography. Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) writ denied sub nom. *Burgess v. Holder*, No. 1:09-CR-00017-GCM, 2014 WL 1432042 (W.D.N.C. Apr. 14, 2014) (quoting *New York v. Ferber*, 458 U.S. at 759). "The pornography's continued existence causes the child victims continuing harm by haunting the children in years to come." *Osborne v. Ohio*, 495 U.S. 103, 111

---

[4] *See* FEDERAL SENTENCING OF CHILD PORNOGRAPHY NON-PRODUCTION OFFENSES (2021), available online at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf (accessed October 20, 2021).

(1990).

In *Paroline v. United States*, the Supreme Court recently discussed the harms caused by child pornography traffickers in the context of restitution for victims of child exploitation:

> Child pornography possessors are jointly liable under this standard, for they act in concert as part of a global network of possessors, distributors, and producers who pursue the common purpose of trafficking in images of child sexual abuse. As Congress itself recognized, "possessors of such material" are an integral part of the "market for the sexual exploitative use of children." § 2251 Finding (12). Moreover, although possessors like Paroline may not be familiar with every last participant in the market for child sexual abuse images, there is little doubt that they act with knowledge of the inevitable harms caused by their combined conduct. Paroline himself admitted to possessing between 150 and 300 images of minors engaged in sexually explicit conduct, which he downloaded from other offenders on the Internet. See 672 F.Supp.2d 781, 783; App. 146. By communally browsing and downloading Internet child pornography, offenders like Paroline "fuel the process" that allows the industry to flourish. O'Connell, Paedophiles Networking on the Internet, in Child Abuse on the Internet: Ending the Silence 77 (C. Arnaldo ed. 2001). Indeed, one expert describes Internet child pornography networks as "an example of a complex criminal conspiracy," ibid.—the quintessential concerted action to which joint and several liability attaches.

*Paroline v. United States*, 134 S. Ct. 1710, 1741 (2014).

In the present case, the defendant has admitted that for years he used the internet to seek out child pornography, and that he also distributed child pornography. The defendant sought validation of his sexual desire for children through his selling of child pornography to adult men, and obtained $24,000 though his prolific sale of images of the purported sexual abuse of a 13-year old for the benefit of other men who were likewise sexually attracted to minors. A sentence of 10 years' imprisonment is sufficient, but not more than necessary, to reflect the seriousness of the offenses, and to provide just punishment.

### C. **The Defendant's Collection of Child Pornography Reflects a Sexual Attraction to Minors**

As mentioned above, in addition to the scheme to sell purported self-produced child pornography of a minor, the defendant spent years searching for and collecting child pornography. The images that the defendant searched for and collected included prepubescent minors engaged in sex acts with adults. A review of the defendant's devices reflects that the defendant traded child pornography with others separate and apart from his scheme to sell the purported child pornography. His collection also included images of prepubescent minors and toddler that he never offered to others. The defendant's years long conduct of searching for and maintaining files of the sexual abuse of children, separate and distinct from the scheme to sell, indicates his sexual interest in children, and further demonstrates the danger posed by the defendant.

### D. **The Public Needs to be Protected from Further Crimes of the defendant**

The defendant is a pedophile. For years, he has trafficked in images of the sexual abuse of children, and encouraged similar conduct in others through his online conversations and sale of a purported 13-year old engaged in sexually explicit conduct. According to the DSM V, the diagnostic criteria of pedophilic sexual disorder are:

> A. Over a period of at least 6 months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children (generally age 13 years or younger).
>
> B. The individual has acted on these sexual urges, or the sexual urges or fantasies cause marked distress or interpersonal difficulty.
>
> C. The individual is at least age 16 years and at least 5 years older than the child or children in Criterion A.

*Diagnostic & Statistical Manual of Mental Disorders, 5th Ed.* Amer. Psych. Assn. (2013).

The defendant appears to satisfy all of the criteria for pedophilic disorder. He is an adult who has engaged in this behavior for years. He has been unable to resist violating the law, and

has repeatedly sought sexual gratification from the exploitation of prepubescent children. He has acted on these urges, validating and enabling the pedophilia of others through his active participation in child pornography communities.

There is no reason to believe that the defendant will stop being a pedophile when he is returned to the community. As such, the sentence imposed in this case should be one that protects the public from further crimes of the defendant. Children in the community deserve to be protected from his further crimes, and his punishment in this case should make clear to him and to the public that such serious offenses against the safety and security of children carry grave penalties. The defendant should be sentenced to 10 years' imprisonment followed by lifetime supervised release.

### III. CONCLUSION

WHEREFORE, for the reasons stated herein, the government respectfully requests that the Court impose a sentence of 10 years' (120 months') imprisonment followed by 25 years of supervised release.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____

Paul E. Budlow
Assistant United States Attorney